UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
HOME DEPOT U.S.A., INC.,

                Plaintiff,                    MEMORANDUM
                                           AND
            -against-                 __ORDER__

G & S INVESTORS/WILLOW           98-CV-6719 (TCP) (ARL)
PARK, L.P., MELICK-TULLY &
ASSOCIATES, INC., and
JAMES A. SMITH CONTRACTING, INC.,

              Defendants
----------------------------------------------------X
RELIASTAR LIFE INSURANCE
COMPANY OF NEW YORK,

                                    00-CV-676 (TCP)(ARL)

                Plaintiff,

            -against-

HOME DEPOT U.S.A., INC.,

                Defendant,
----------------------------------------------------X
HOME DEPOT U.S.A., INC.,

                Third-Party Plaintiff,

            -against-

G & S INVESTORS/WILLOW PARK, L.P.,
Third-Party Defendant.
----------------------------------------------------X

PLATT, District Judge.

            Home Depot, USA Inc. ("Home Depot" or "Plaintiff") brings this

action against G & S Investors/Willow Park, L.P. ("G & S Investors" or "G & S");

Melick-Tully & Associates, Inc. ("Melick-Tully"); and James A. Smith Contracting, Inc. ("Smith Contracting"), (collectively "Defendants"), alleging breach of contract; negligent misrepresentation;[1] constructive eviction, and seeking legal fees; reimbursement for expenses in making repairs; and "such other and further relief as the court deems necessary and proper." ReliaStar Life Insurance Company of New York ("ReliaStar" or "Third Party Complainant") brings a further complaint against Home Depot for indemnity or contribution.

Before this Court are the following seven (7) motions:

1.    G & S Investors Motion for Summary Judgment against Home Depot

2.    Home Depot's Cross-Motion for Partial Summary Judgment against G & S Investors

3.    Home Depot's Motions *in Limine* against G & S Investors

4.    G & S Investors' Cross-Motion *in Limine* against Home Depot

5.    Reliastar's Motion *in Limine* and for Summary Judgment against Home Depot

6.    Home Depot's Cross-Motion for Partial Summary Judgment against Reliastar

7.    Melick-Tully's Cross-Motion for Summary Judgment and Motion to Dismiss against Home Depot.

---

1    In the present opposition motion for summary judgment, Home Depot has withdrawn its claim for negligent misrepresentation against G & S. (Pl.'s Opp. Mem. Sum. J. at 2, n. 4) It is unclear whether they also withdraw this claim as to Melick-Tully and Smith Contracting.

**For the following reasons, the motions are DENIED in part and GRANTED in part.**

<u>BACKGROUND</u>

On or about February 27, 1989, Home Depot entered into a lease with G & S Investors (the "landlord") for premises located in Farmingdale, New York upon which Home Depot was to construct a home improvement center and garden area (the "Farmingdale store"). The Lease was amended on August 30, 1989 and again on January 24, 1990 (collectively "Lease").

Under the terms of the Lease, the parties agreed that: (1) G & S would provide for Home Depot, on land owned by G & S, an earthen "pad" suitable for Home Depot upon which to construct a facility; (2) Home Depot would then construct a building on the site; and (3) G & S would, thereafter, lease the premises to Home Depot for its retail operations. The agreement further provided that G & S would be responsible for the construction of the "Common Areas" of the shopping center and performance of all "Site Work" in a "good and workmanlike manner." The agreement defined "Site Work" to mean that G & S must provide Home Depot with temporary utilities, temporary roadways, and a staging area to permit construction of the building. It also required G & S to provide permanent utilities to a point within five feet of the building within 90 days of delivery of the earthen pad.

Plaintiff alleges that G & S then engaged Melick-Tully to do the following, inter alia: (i) investigate the soil conditions at the Premises and design a

plan to modify the site at the Premises to sustain the weight loads of the Home Depot store as required under the Lease; (ii) observe the excavation of unsuitable fill materials from within the proposed building area; (iii) supervise the *in situ* desification of existing fill materials within the building area; (iv) perform test borings to gauge the effectiveness of the dynamic compaction on the existing fill materials; (v) evaluate the suitability of materials proposed for use as controlled compaction fill in the building area; and (vi) supervise the placement and compaction of controlled compacted fill and back fill within the proposed building area. (HD's 56.1 Stmt. at ¶¶ 15-16).

In December 1990, Melick-Tully provided an opinion to G & S regarding the conditions of the site. Plaintiff alleges that this opinion provided that all areas at the Premises would provide suitable support for proposed concrete slab loads. (HD's 56.1 Stmt. at ¶15). On April 10, 1990, Home Depot and Smith Contracting, entered into an agreement for Smith, as contractor, to construct a new 102,159 square foot Home Depot store at Route 110 Willow Park, Farmingdale, New York (the "Construction Contract"). (HD's Amended Complaint at ¶31). Plaintiff alleges that Smith obligated itself to be familiar with the Site Work and accept the building area as being suitable for construction of a Home Depot store as set forth in the architect's plans and specifications prior to commencing construction.

On May 9, 1990, Home Depot accepted the earthen building pad

supplied by G & S.  By December 1990, plaintiff alleges that the Site Work undertaken by G & S pursuant to the Lease was substantially completed and the construction work undertaken by Smith under the Construction Contract was substantially completed.  On December 27, 1990, Home Depot USA opened the Premises as a Home Depot store to the public.

In 1993, ReliaStar made a $13 million loan to G & S secured by, inter alia, a mortgage on the Premises and an assignment of the twenty-year lease from G & S to Home Depot.  Home Depot, G & S, and ReliaStar also simultaneously entered into a Recognition Agreement ("Recognition Agreement").  The transaction was structured so that the monthly payments would be paid out of the monthly rents payable by Home Depot under the Lease, with Home Depot paying its rent directly to ReliaStar.  According to ReliaStar, Home Depot made the monthly rent payments to ReliaStar from November 1993 until August 1999, but has failed to make payments from September 1999 to the present. (ReliaStar's 56.1 Stmt. at ¶¶ 28-29).

Beginning in 1996, the Home Depot store, pad and related Site Work had begun to sink and settle unevenly, according to Home Depot.  (HD's 56.1 Stmt. at ¶ 17).  Home Depot purportedly demanded that G & S make repairs as required by the Lease.  By May 1997, Home Depot maintains that it was forced to make temporary emergency repairs to ensure that the building complied with the applicable code.  Home Depot again made a demand that G & S make repairs, but allegedly G & S refused.  (HD's 56.1 Stmt. at ¶¶ 18-20).   Home Depot claims to

have expended approximately $750,000 in temporary repairs to keep the Home Depot store safe for its customers. (HD's 56.1 Stmt. at ¶ 19).

Paragraph 9.1 of the Lease–the provision of which all parties contest the meaning–provides the following:

> 9.1 <u>Landlord's Repairs.</u> Landlord shall not be responsible for any repairs to the Premises or parking areas of the Shopping Center except for patent or latent defects to the parking areas which manifest themselves prior to the end of the third (3rd) Lease Year and except for those attributable to the negligence or willful misconduct of the Landlord, its agents, employees or contractors and are not insurable, insured or required to be insured for hereunder or as may be otherwise set forth herein.

(G & S Ex. D).

**Procedural History**

Home Depot's original complaint was filed in October 1998. It brought claims for negligent design and construction, a declaration that the Lease is terminated and that plaintiff is discharged of any obligations it may have under the Lease, and attorneys' fees and court costs. In August 1999, Home Depot alleges it was constructively evicted due to the dangerous and unsafe conditions caused by the sinking. (HD's 56.1 Stmt. at ¶ 26). By letter dated August 13, 1999, Home Depot advised G & S that in view of G & S's actions, Home Depot had been constructively evicted and the Lease was terminated.

Home Depot's complaint was subsequently amended to reflect developments that had occurred since the filing of the initial complaint, including the

fact of its constructive eviction in August of 1999.  There are currently five causes of

action that the plaintiff seeks: (1) breach of contract due to G & S's tendering of an

insufficient building pad to Home Depot in May of 1990; (2) negligent

misrepresentation because in May of 1990 G & S negligently misrepresented the

suitability of the completed building pad; (3) constructive eviction that resulted from

G & S's failure to repair the pad; (4) legal fees; and (5) reimbursement for expenses

in making repairs.

ReliaStar instituted its action against Home Depot on or about

September 13, 1999 in the United States District Court for the District of Minnesota,

seeking the rent payments purportedly due under the Lease from September 1999 to

the present, plus interest, late charges and attorney's fees.  Before answering, Home

Depot moved for a change of venue to the Eastern District of New York and by

order dated January 13, 2000, its request was granted.  On April 19, 2000,

ReliaStar's action was consolidated with the Home Depot action for discovery and

trial.

## DISCUSSION

### I.    Motions for Summary Judgment

A motion for summary judgment may not be granted unless the court

determines that there is "no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A party opposing a properly

brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" <u>Amnesty Am. v. Town of W. Hartford</u>, 288 F.3d 467, 470 (2d Cir. 2002) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994).

The parties have filed the following motions for summary judgment and cross-motions for partial summary judgment, which shall be addressed in turn:

A.      G & S Investors' Motion for Summary Judgment and
          <u>Home Depot's Cross Motion for Partial Summary Judgment</u>

G & S has moved for summary judgment as to all five claims asserted by Home Depot.  Home Depot has moved for partial summary judgment as to G & S's second counterclaim in which G &S asserts that: (i) Home Depot failed to properly construct the subject building; (ii) Home Depot failed to make repairs to the premises; (iii) paragraphs 9.1 and 9.2 of the lease obligate Home Depot to make repairs; and (iv) G & S should be awarded damages.  For the reasons discussed below, Home Depot's motion for partial summary judgment against G & S's second counterclaim is GRANTED; and G & S's motion for summary judgment is DENIED.

G & S devotes the majority of the space in its motion papers to

advancing a single argument: G & S is not responsible for repairing any defects in the land because paragraph 9.1 of the Lease obligates Home Depot to repair defects that are "insurable or insured," which it contends includes the earthen pad. For G & S there appear to be six different ways to skin this cat, and so it moves for summary judgment on six (6) grounds, most of which hinge on their "insurable or insured" argument: (i) the lease is unambiguous as to Home Depot's responsibility to cure such defects;[2] (ii) Home Depot's constructive eviction claim must fail because Home Depot, not G & S, had the duty of repair;[3] (iii) Home Depot may not claim to have "relied" upon any misrepresentation as to the suitability of the underlying soils by Melick-Tully because it was also told that some of the fill materials would not be suitable and thus it had a duty to further investigate; (iv) the statute of limitations has run on its intentional and negligent misrepresentation claims; (v) Home Depot's claim for attorney's fees is without merit; and (vi) G & S's counterclaim for summary judgment that Home Depot breached the lease should be granted because it was Home Depot which was responsible for repairing the foundation defects.

---

2      G & S notes that Home Depot purchased a $25,000,000 all risk policy which covered such defects. Moreover, G & S claims that it was prejudiced because it was not permitted to conduct discovery on this issue by Magistrate Judge Lindsay. G & S thus claims that Home Depot is judicially estopped from arguing that its insurance policy does not cover these defects.

3      Further, G & S argues that the long interim between when Home Depot learned of the deformities in the structure (in the winter 1995-96) and when it actually left the premises (in August 1999), renders its constructive eviction claim null. Home Depot, however, argues in its opposition papers that there remains a question of fact as to the reasonableness of Home Depot's conduct here. (Pl.'s Cross Mot. Sum. J. at 6).

Home Depot responds in opposition that (i) G & S does not have standing to assert claims for damages against Home Depot for breach of the Lease because it assigned its rights to ReliaStar,[4] (ii) Home Depot was constructively evicted from the Premises, and (iii) it was G & S Investors' obligation, not Home Depot's, to repair the earthen pad and sub-surface foundation.

The touchstone of both parties' arguments rests upon this Court's interpretation of paragraph 9.1 of the Lease, which states:

> 9.1 <u>Landlord's Repairs.</u> Landlord shall not be responsible for any repairs to the Premises...except for those attributable to the negligence or willful misconduct of the Landlord, its agents, employees or contractors and are not insurable, insured or required to be insured for hereunder or as may be otherwise set forth herein.

(G & S Ex. D).

G & S argues that under paragraph 9.1, it was Home Depot's responsibility to make all repairs, including repairs to the earthen pad and foundation. G & S further argues that it was Home Depot's obligation to make these repairs because the alleged deficiencies in the pad were either actually insured or certainly were insurable.

Home Depot replies that sections 9.1 and 9.2 of the Lease do not even apply in this situation because those sections delineate the parties' responsibilities

_____

4    This argument is without merit. Home Depot may not have it both ways: if Home Depot can sue G & S based on the Lease, then G & S has standing to defend its position under the Lease.

-10-

for repairs to the "Premises."  (Pl.'s Cross Mot. at 6-7).  The Lease defines the "Premises" as "a building containing not more than 102,300 gross leasable square feet...and...an outdoor garden shop and storage area of not more than 12,500 square feet."  (Lease at ¶ 1.1).  Thus, it argues that G & S should not be able to point to paragraph 9.1 to exempt it from the obligation to repair the pad and foundation.

Home Depot further argues that G & S breached sections 2.1 and 15 of the Lease, resulting in its constructive eviction.  Under sections 2.1 and 2.2, G & S was obligated to perform the "site work," which included compaction of the earthen pad beneath where Home Depot was to build the store.  Home Depot alleges that the compaction was negligently performed, resulting in the uneven settling of the store and damage to the foundation.  Hence, Home Depot argues G & S's failure to repair the damage which resulted from its negligence violated the covenant of quiet enjoyment contained in section 15 of the Lease and led to Home Depot's constructive eviction.[5]  G & S circularly argues that it had no duty to remedy any damages which resulted from its negligence, if any, because Home Depot was obligated to make the repairs.

The Court finds that paragraph 9.1 does not apply to the pad and foundation and thus does not aid this Court in determining which party is responsible

---

[5]Home Depot also makes this claim under section 10.6 of the Lease, which holds the landlord liable for damages from any cause which results from the negligence of the landlord, its employees or agents.

for the repairs.  In construing contracts, where the writing is clear – particularly in real property transactions where the agreement was negotiated between sophisticated business people – the language in the agreement should be enforced by its terms. Vermont Teddy Bear v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (N.Y. 2004)(citing Matter of Wallace v. 600 Partners Co., 86 N.Y.2d 543, 548 (1995)). The plain language of this agreement makes clear that the "Premises" is defined only as the structures on the land and does not include the land itself.  South Road Assocs. v. International Bus. Mach. Corp., 4 N.Y.3d 272, 277-78 (N.Y. 2005) (holding "premises" as defined in lease only included interior building spaces and not the land because agreement referred to a certain number of square feet in two buildings and referenced a "floor plan").  Home Depot's repair obligation extends only to the "Premises," as defined in the Lease agreement.

Moreover, paragraphs 9.1 and 9.2 are inapplicable to the instant case in that the Court finds that these paragraphs are limited to the obligation to make ordinary repairs.  Covenants to repair, like covenants contained in paragraphs 9.1 and 9.2, have been almost uniformly construed as not to include substantial or unforeseen building additions or alterations.  See Mayfair Merch. Co. v. Wayne, 415 F.2d 23 (2d Cir. 1969).  Absent clear evidence that the parties intended that the tenant be responsible for substantial or unforeseen building alterations, courts have limited the scope of such covenants to ordinary repairs.  Id.; Street v. Central Brewing Co., 101 A.D. 3 (2d Dep't 1905).  Defendants cannot direct the Court to

any provision in the Lease that manifests the intent of the parties that Home Depot would bear the responsibility for extraordinary repairs; thus, the Court limits the scope of paragraph 9.1 and 9.2 to ordinary repairs. The Court also finds, and the parties do not dispute, that the repairs necessary for Home Depot to continue to occupy the store safely are in the nature of extraordinary or major structural repairs. Where, as here, there is no clear evidence that the parties intended that the tenant would be responsible for extraordinary repairs, the Court is constrained to find that, as a matter of law, Home Depot does not bear the responsibility for the cost of the extraordinary repairs to the foundation and earthen pad.

In so finding, the Court is guided by other decisions in this State and Circuit, which in reaching the same conclusion, have considered such factors as the nature and extent of the repairs, which party will receive the greatest benefit from the repairs, and whether the repair was within the contemplation of the parties at the time they entered into the lease. See e.g., Cohen v. E. & J. Bass, 246 N.Y. 270, 277 (1927); Second United Cities Realty Corp. v. Price & Schumacher Co., Inc., 242 N.Y. 120, 123-24 (1926); Mayfair Merch., 415 F.2d 23, 25 (2d Cir. 1969).

As noted above, the repairs to the foundation and earthen pad were clearly substantial and costly repairs. Home Depot claims to have expended $750,000 just to put on a band-aid and temporarily remain in business in a facility that would be safe for its customers and employees. As for which party would receive the greatest benefit from the repairs, Home Depot was compensated by G &

S for constructing the building.  If Home Depot were required to bear the costs of essentially reconstructing the building, certainly G & S would receive the greatest benefit, despite the twenty year term of the Lease.  In addition, it appears from the Lease terms that repairs to the foundation, and consequently the earthen pad, were contemplated by the parties at the time of drafting.  Paragraph 9.1 refers to repairs that are "insurable, insured or required to be insured for *hereunder or as otherwise may be set forth herein.*"  Paragraph 10.2 of the lease, which sets forth Home Depot's insurance obligations, explicitly excludes any requirement that Home Depot insure the foundation[6] – an indication that Home Depot did not intend to bear any responsibility for the land beneath the building.  A balancing of the equities herein is further support for attributing the duty to make extraordinary repairs to the landlord.

In sum, because the Court finds that Home Depot bore no responsibility for making extraordinary repairs nor for making repairs to the foundation and earthen pad, G & S's second counterclaim must fail, and Home Depot's motion for partial summary judgment is granted.  The Court need not address G & S's claim that Home Depot failed to properly construct the building at issue.  G & S's own negligence in compacting the earthen pad precludes any claim against Home Depot for negligently constructing the building.  For the same reasons,

---

[6] G & S's arguments concerning Home Depot's insurance coverage miss the mark.  The Lease should not be construed against Home Depot simply because it chose to protect its interests in the property and take out an "All-Risk" insurance policy even though it was not required to do so by the terms of the Lease.

G & S's motion for summary judgment is denied.

B.     ReliaStar's Motion for Summary Judgment and Home
Depot's Cross-Motion for Partial Summary Judgment

ReliaStar moves for summary judgment against Home Depot for the rent monies that it alleges Home Depot owes it from September 1999 to the present. According to ReliaStar, paragraph 7(a) of the Recognition Agreement clearly establishes Home Depot's "unconditional and absolute" obligation to pay rent to ReliaStar "without reduction, offset, abatement, or diminution whatever." Para. 7(a) of the Recognition Agreement states:

> Tenant agrees that notwithstanding anything in the Lease or this Agreement contained to the contrary, until Mortgagee notify [sic] Tenant that the Assignment has been released, Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment all rents, purchase payments and other payments of whatever kind described in the Lease without any reduction, set off, abatement, or diminution whatever.

> (ReliaStar Ex. F).

ReliaStar claims that this so-called "hell or high water" clause requires that Home Depot pay rent regardless of any breach by G & S or purported constructive eviction by Home Depot. Further, ReliaStar claims that Home Depot is estopped from asserting any defense based on G & S Investors' failure to properly construct the pad because of its absolute and unconditional obligation to pay rent. (ReliaStar Mem. Sum. J. at 13-17).

Home Depot cross moves for summary judgment that it is not

estopped from raising the defense of constructive eviction against ReliaStar because at the time it signed the Recognition Agreement, it did not know that the Store was going to settle. Home Depot points to paragraph 8 of the Recognition Agreement which requires that Home Depot certify to ReliaStar only as to conditions it was aware of when signing the Recognition Agreement. Thus, it argues it may not default on its rent payments as to conditions, such as the defective building pad, later discovered by Home Depot. It also moves on the grounds that Judge Kyle in the Minnesota case already ruled that Home Depot could assert a constructive eviction defense when it granted Home Depot's transfer motion. Finally, Home Depot asserts that the Recognition Agreement is void because it was not supported by consideration by Home Depot. Whereas, G & S received a $13 million loan from ReliaStar, Home Depot received nothing.

First, paragraph 7(a) is unambiguous on its face and requires that Home Depot pay rent to ReliaStar without any "reduction, set off, abatement, or diminution whatever." Though Home Depot argues that it intended otherwise, the Court may not disturb the clear language of an agreement like this one that was negotiated between "'sophisticated, counseled business people negotiating at arm's length.'" Vermont Teddy Bear, 1 N.Y.3d at 475 (citation omitted). Though not watertight, these "hell or highwater" clauses are generally enforceable. Rhythm & Hues, Inc. v. The Terminal Marketing Co., Inc., 2002 WL 1343759, at *5 (S.D.N.Y. Jan. 19, 2002). Moreover, this Court notes that courts have found that a party is

estopped from asserting any defenses against the clear obligations outlined in such clauses.  See, e.g.,  Wells Fargo Bank Minn, N.A. v. Nassau, 2003 WL 22339299, * 7 (S.D.N.Y. October 10, 2003); Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 94-5 (N.Y. 1985); Eaton v. Laurel Delicatessen Corp., 5 A.D.2d 590 (1st Dep't 1958), aff'd, 5 N.Y.2d 1029 (1959).  Since the Court finds that paragraph 7(a) constitutes a valid "hell or highwater" clause and that Home Depot is estopped from asserting its defense of constructive eviction (or any other defense for that matter) against ReliaStar, summary judgment is granted for ReliaStar on this claim.

Second, summary judgment is denied as to Home Depot's cross motion asserting that the Recognition Agreement was not supported by consideration.  It is axiomatic that a "benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another."  Mencher v. Weiss, 306 N.Y. 1, 8 (1953).  Thus, summary judgment is denied as to this claim.

C.    Melick-Tully's Motion for Summary Judgment
       and Motion to Dismiss for Failure to State a Claim

Melick-Tully moves to dismiss for failure to state a claim on the ground that Melick-Tully's contractual obligations extended only to G & S as Melick-Tully and Home Depot never entered into a contractual relationship.  Thus, Melick-Tully asserts that Home Depot's claims against it alleging negligence and engineering malpractice in breach of contractual duties lie in tort, and not in

contract, and therefore must fail.[7]  Home Depot replies that it relied upon Melick-Tully's reports and professional advice and was a third-party beneficiary to the contract between Melick-Tully and G & S.

As counsel for Melick-Tully correctly points out in its Memorandum of Law, a duty of care to non-contracting third parties may arise out of a contractual obligation or the performance thereof in three limited circumstances.  (Melick-Tully Mem. Sum. J. at 6-7).  Such a duty may arise where: (i) the promsior, while performing a contractual obligation, creates an unreasonable risk of harm to others or increases that risk; (ii) the plaintiff reasonably relied upon the promisor's continuing performance of a contractual obligation; and (iii) the promisor assumed the promisee's safety responsibilities.  Church v. Callanan Indus., Inc., 99 N.Y.2d 104, 111-12 (2002)(citations omitted)(holding that subcontractor's liability arose only from its contractual obligation to the general contractor and plaintiff could not recover in tort for the breach of contract).  The exceptions to the general rule stated above raise material issues of fact – specifically whether Home Depot reasonably relied upon Melick-Tully's performance and whether Melick-Tully assumed G & S's safety responsibilities such that Home Depot was a third party beneficiary of the agreement between Melick-Tully and G & S.  Thus, summary judgment is denied.

---

[7]As Melick-Tully's motion to dismiss for failure to state a claim presents to the Court matters outside of the pleadings, the Court shall treat this motion as one for summary judgment under Rule 56.

Melick-Tully also moves for summary judgment on the assertion that Home Depot's negligence and engineering malpractice causes of action against Melick-Tully should be dismissed as time-barred. (Melick-Tully Mem. Sum. J. at 4-6) According to Melick-Tully, these causes of action accrued prior to May 9, 1990 and thus are now time-barred by the three (3) year statute of limitations under C.P.L.R. § 214.

Home Depot argues that the statute of limitations did not begin to run until December 9, 1990 when the construction project was complete; and thus, it is well within the statute of limitations here. Melick-Tully and Home Depot had entered into a tolling agreement on November 19, 1996 which stopped all federal and state statute of limitations from running. Under this calculation, Home Depot would not have been out of time until December 9, 1996 which was after the toll.

A claim for professional malpractice against engineers and architects "generally accrues upon completion of the construction of the entire project." See, e.g., Bd. Of Managers of the Ocean Club v. Mandel, 235 A.D.2d 382, 383 (2d Dep't 1997); 75 Am. Jur. 2d, Limitations and Laches, § 248 (2003) (stating that "[i]t is well settled that an owner's claim against an architect [and engineer] arising out of the alleged defective construction of a building, however denominated, accrues for purposes of the statute of limitations upon the completion of the construction"). Melick-Tully's contention that Home Depot's claim against it accrued before May 9, 1990 raises a material issue of fact as to when the Farmingdale store construction

project was finished; thus, Melick-Tully's cross-motion for summary judgment is denied.

II.     **Motions _In Limine_**

    A.    Home Depot's Motion _in Limine_ to Exclude Statements
        by Greg Wasser Regarding the Lease and G & S's Cross
        Motion _in Limine_ to Preclude Parol Evidence Regarding the Lease

        Home Depot moves to exclude certain testimony of Greg Wasser, a G & S principal, concerning the meaning of the repair obligations of the Lease under paragraph 9.1.  Alleging that the terms of paragraph 9.1 are unambiguous, Home Depot argues that extrinsic evidence, such as Wasser's testimony, should not be allowed to provide an alternate explanation concerning G & S's intent during the contract negotiations.  (Home Depot Mot. Lim. at 5-10).  G & S cross moves _in limine_ to preclude Home Depot from offering any parol evidence with respect to the Lease and replies that paragraph 9.1 is ambiguous[8] and that even if it were unambiguous, the parole evidence rule would not bar testimony such as Wasser's.

        As a preliminary matter, at this early stage of the case, the parties' attempt to exclude whole items of evidence that may or may not be introduced at trial is an inappropriate use of the motion _in limine_ device.  The purpose of an _in limine_ motion is to enable the trial court to rule on disputes over the admissibility of

---

    7     It argues this despite the fact that it also files a motion for summary judgment as to the purported clarity of this paragraph.

discrete items of evidence. <u>TVT Records v. Island Def Jams Music Group</u>, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003). It is common for courts to reserve judgment on a motion *in limine* until trial so that the motion can be placed in the appropriate factual context. <u>United States v. Chan</u>, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citations omitted). Indeed, many Courts have found that it is the better practice to deal with questions of admissibility as they arise. <u>Sperberg v. Goodyear Tire & Rubber, Co.</u>, 519 F.2d 708, 712 (6th Cir. 1975); <u>TVT Records</u>, 250 F. Supp. 2d at 344 (noting with dismay that the "parties seek to employ their *in limine* motions as preemptive weapons with which they endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence" that may or may not ever be introduced as evidence at trial).

Here, Home Depot seeks to exclude the Wasser affidavit *in toto*, or in the alternative those portions of the affidavit that describe conversations during the negotiation process of the Lease. G & S seeks to preclude Home Depot from introducing any parol evidence with respect to the Lease and argues that the parol evidence rule is equally applicable to both parties. There are numerous purposes for which Wasser's affidavit and/or potential testimony on this topic could be used that do not include the intent behind the wording of paragraph 9.1. Home Depot's suggestion that the affidavit should be stricken wholesale or even in part is thus denied at this juncture. Similarly, G & S's efforts to preclude parol evidence are premature, and G & S's cross-motion *in limine* is also denied.

B.	Home Depot's Motion *in Limine* to Preclude Testimony
	Regarding Home Depot's Actual Insurance Coverage

Home Depot has moved *in limine* to preclude G & S from introducing at trial any evidence concerning Home Depot's actual insurance coverage of the Farmingdale store and any payments received from its insurers because of this coverage. As stated above in section II.A., it is common for courts to reserve judgment on a motion *in limine* until trial so that the motion can be placed in the appropriate factual context. United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citations omitted). There may be a variety of reasons for excluding or permitting at trial potential testimony concerning Home Depot's insurance coverage. The Court, however, refuses to make such a blanket ruling at this juncture; and thus, Home Depot's motion *in limine* is denied.

C.	ReliaStar's Motion *in Limine* to Exclude Kenneth
	Baye's Affidavit Regarding the Recognition Agreement

ReliaStar claims that the parole evidence rule bars Home Depot from introducing at trial any evidence that it did not intend an absolute and unconditional obligation to pay rent under the Recognition Agreement. (ReliaStar Mot. Lim. at 7). Again, the pertinent provision of the Recognition Agreement states as follows:

> Tenant agrees that notwithstanding anything in the Lease or this Agreement contained to the contrary, until Mortgagee notify [sic] Tenant that the Assignment has been released, Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment all rents, purchase payments and other payments of whatever kind described in the Lease without any reduction, set off,

-22-

abatement, or diminution whatever.

(ReliaStar Ex. F).

ReliaStar argues that because paragraph 7(a) of the Recognition Agreement is unambiguous, the affidavit of Kenneth Baye's should be stricken. Mr. Baye, who was Home Depot's corporate counsel in 1993 and represented Home Depot in the Recognition Agreement negotiations, claims in his affidavit that paragraph 7(a) as it is written is ambiguous because it does not reflect the parties' intentions. Home Depot responds that paragraph 7(a) is not a draconian "hell or high water" clause as ReliaStar claims and that since it is ambiguous, Kenneth Baye's affidavit and ultimate testimony should be permitted under the parole evidence rule. (Home Depot's Opp. Mot. at 6-8).

As discussed above in section I.B., however, paragraph is 7(a) is clear on its face and thus parole evidence is not permitted to create an ambiguity. Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002) (holding that it is "well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract"); South Road Assocs., 4 N.Y.3d at 277-78 (ruling that "whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous"). Accordingly, the motion *in limine* is granted to the extent that the Baye affidavit and future testimony are provided to explain the circumstances surrounding paragraph 7(a) of the Recognition Agreement.

## <u>CONCLUSION</u>

For all the foregoing reasons:

1.  G & S Investors Motion for Summary Judgment against Home Depot is DENIED.  (pp. 8-15).

2.  Home Depot's Cross-Motion for Partial Summary Judgment against G & S Investors is GRANTED.  (pp. 8-15).

3.  Home Depot's Motions *in Limine* against G & S Investors are DENIED.  (pp. 20-22).

4.  G & S Investors' Cross-Motion *in Limine* against Home Depot is DENIED.  (pp. 20-22).

5.  Reliastar's Motion *in Limine* and Motion for Summary Judgment against Home Depot are GRANTED.  (pp. 15-17; 22-24).

6.  Home Depot's Cross-Motion for Partial Summary Judgment against Reliastar is DENIED.  (pp. 15-17).

7.  Melick-Tully's Cross-Motion for Summary Judgment and Motion to Dismiss against Home Depot are DENIED.  (pp. 18-20).


SO ORDERED.


_____s/s_____
District Judge, United States District Court


Dated: Central Islip, New York
          November 7, 2005