UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
RELIASTAR LIFE INSURANCE
COMPANY OF NEW YORK,

                                                    00-CV-676 (TCP)(ARL)

                    Plaintiff,

          -against-

HOME DEPOT U.S.A., INC.

                    Defendant.                  MEMORANDUM
                                                    AND
                                                __ ORDER __

----------------------------------------------------X

PLATT, District Judge.

          ReliaStar Life Insurance Company of New York ("ReliaStar" or

"Plaintiff") brings this action against Home Depot U.S.A. Inc. ("Home Depot" or

"Defendant") to recover installments of unpaid rent, which Home Depot was

obligated to pay pursuant to a Recognition Agreement entered into between Home

Depot, ReliaStar, and G & S Investors/Willow Park ("G & S").  The Recognition

Agreement obligated Home Depot to pay rents due under a Lease between Home

Depot and  G & S.  On November 7, 2005, this Court granted Summary Judgment

in favor of ReliaStar on the issue of Home Depot's liability under the Recognition

Agreement and Lease.

          Before this Court are the following two (2) motions.[1]

_____

          1     This Court declines to address Home Depot's Motion to dismiss its claims
                without prejudice and with a provision tolling the statute of limitations.  Home
                Depot makes this Motion informally, by way of letter to the Court.  Such
                motions should be made formally, by motion papers and filed in accordance with
                both the Local Rules of the Eastern District of New York and the Local Rules of
                this Court.

1)    Plaintiff, Reliastar Life Insurance Company of New York, moves pursuant to Federal Rule of Civil Procedure 56 for Summary Judgment against Home Depot as to damages;

2)    Plaintiff, Reliastar Life Insurance Company of New York moves for certification under Federal Rule of Civil Procedure 54(b) directing the entry of a Final Judgment in favor of ReliaStar against Home Depot.

**For the following reasons, the motions are DENIED in part and GRANTED in part.**

## BACKGROUND

### I.    Factual Background

On November 7, 2005, this Court granted in part and denied in part several motions for Summary Judgment on the issue of liability under the G & S / Home Depot Lease. Home Depot v. G & S Investors, No. 98-6719, 2005 U.S. Dist. LEXIS 28669 (E.D.N.Y. Nov. 7, 2005).  For purposes of this Motion, the relevant facts are outlined below.

In 1989, G & S, as Landlord, and Home Depot, as Tenant, entered into a twenty (20) year Lease for Premises constructed by Home Depot on property owned by G & S in Farmingdale, New York.  The Lease term was to run through January 11, 2011.  Pursuant to the terms of the Lease, Home Depot was to pay Minimum Monthly Rent starting at $104,166.66 increasing over the term of the Lease in accordance with the schedule set forth in paragraph 4.1 of the Lease.

In October 1993, ReliaStar made a $13,000,000 loan to G & S, which was secured by a Mortgage on the Farmingdale property and an Assignment

of the Lease.  The loan provided for an interest rate of 7.66%.  In the event of default under the loan, interest accrues on the whole of the unpaid principal at a rate of 4% per year, thus, making for a total "Default Interest Rate" of 11.66%.

On October 19, 1993, North Atlantic Life Insurance Company, as Mortgagee,[2] Home Depot, and G & S entered into a Recognition Agreement whereby Home Depot agreed that "Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment all rents, purchase payments and other payments whatever kind described in the Lease without any reduction, set off, abatement, or diminution whatever." (Pl.'s Mot. Sum. J. Ex. F at ¶ 7(a)).

Thereafter, from November 1993 until August 1999 Home Depot made monthly rent payments to ReliaStar in accordance with the Recognition Agreement.  On September 1, 1999, Home Depot refused to make any further rent payments and subsequently abandoned the premises in February 2000.

From September 1999 through October 2003 Home Depot failed to make monthly rent payments to ReliaStar.  G & S, on the other hand, did make two lump sum payments totaling $9,186,619.92. (Def.'s Opp. Mem. at 5).  To this date, G & S has made no further payments on the principal or interest of the loan.  In November 2003, G & S re-let the property to Target, who began making monthly rent payments of $108,333.33.

---

2.     ReliaStar is the successor in interest to North Atlantic Life Insurance Company, who merged with ReliaStar Life Insurance Company subsequent to the date of the loan.

II.    **The G & S / Home Depot Lease**

Article IV: Rent

*Minimum Monthly Rent.*  G & S entered into a Lease with Home Depot dated February 27, 1989. (Pl.'s Mot. Sum. J. Ex. E).  Under the terms of the Lease, Home Depot is responsible for paying rent in equal monthly installments beginning at $104,166.66, which increase gradually pursuant to a schedule set forth in Article IV, paragraph 4.1 of the Lease.

Article V: Taxes

*Real Estate Taxes.*  Article V, paragraph 5.1 of the Lease states that the Tenant shall be liable for paying certain real estate taxes.  Paragraph 5.1 states that Tenant shall be liable for paying taxes to the Landlord in the event that the Shopping Center is assessed separately from the Premises.  However, excluded from such taxes are taxes on income, gross receipts, or revenues.  Next, paragraph 5.1 provides that in the event that the Shopping Center is not assessed separately, the Tenant shall pay to Landlord "Tenant's proportionate share of such taxes."

Article XIV: Default

*Events of Default.*  Paragraph 14.1 of the Lease provides for "Events of Default."  Specifically, the Lease lays out different events which constitute default by the Tenant, thereby, triggering different remedies available to the Landlord, which are set forth in paragraph 14.2.  The Events of Default include, among other things, failure to pay rent.

Specifically, paragraph 14.1 provides that:

[A]ny one or more of the following events ("Events of Default") shall constitute a breach of the Lease by Tenant: (a) failure by Tenant to pay any Minimum Monthly Rent or percentage Rent including Additional Rent, when and as the same becomes due and payable if such failure continues for more than five (5) business days after notice from the Landlord;. . . then, upon the occurrence at any time prior to or during the Term, of any one or more of such events of Default, Landlord at any time thereafter, at Landlord's option, may give to Tenant five (5) days' notice of termination of this Lease and, in the event such notice is given, this Lease and the Term shall come to an end and expire (whether or not the Term shall have commenced) upon the expiration of said five (5) days with the same effect as if the date of expiration of said five (5) days were the Expiration Date but Tenant shall remain liable for damages as provided in Section 14.2 below.

*Landlord's Remedies.* Paragraph 14.2 of the Lease provides for the

Landlord's election of remedies in the event of default, as described above.

If the Tenant shall default in the payments of Rent . . ., or if this Lease and the Term shall expire and come to an end as provided in Section 14.1 above:
(a) Landlord . . . may immediately, or at any time after such default or after the date upon which this Lease and the Term shall expire and come to an end, re-enter the Premises or any part thereof, and may repossess the Premises and dispossess Tenant . . . from the Premises and remove any and all of their property . . .; and

(b) Landlord, at Landlord's option, may re-let the whole or any part or parts of the Premises from time to time, either in the name of Landlord or otherwise, to such tenant or tenants, for such term or terms ending before, on or after the conditions, which may include concession and free rent periods, as Landlord in its sole discretion may determine. Landlord shall have no obligation to re-let the Premises or any part thereof . . . without relieving Tenant of any liability under this Lease or otherwise affecting any such liability.

Thus, the Landlord has three options under the Lease in the event

the Tenant defaults: Landlord can (1) terminate the Lease and seek damages; (2)

-5-

continue to seek rent payments from the Tenant, regardless of default; and (3) at Landlord's option, re-let the Premises or part of the Premises and seek damages.

   *Measure of Damages.*  The Lease provides for three different measures of damages in the event of Tenant's default.  First, Landlord can decide to continue to receive unpaid Rent for the duration of the Lease term.  Second, if the premises are re-let, the Landlord can receive any deficiency between the rent payments received as a result of re-letting and the rent payments owed by the defaulting Tenant.  Finally, the Landlord can elect to receive a final lump sum payment, as liquidated damages, in lieu of further deficiencies owed under subparagraph (b).  Paragraph 14.3 of the Lease provides:

> If this lease and the term shall expire and come to an end as provided in this Article XIV . . . or if the Landlord shall re-enter the Premises as provided in Section 14.2 . . . then, in any of said events:
>
> > (a) Tenant shall pay to Landlord all unpaid Rent due and payable under this Lease by Tenant to Landlord to the date upon which this Lease and the Term shall have expired and come to an end or to the date or re-entry upon the Premises by Landlord, as the case may be;
> >
> > (b) Tenant also shall be liable for and shall pay to Landlord, as damages any deficiency (referred to as "Deficiency") between the Rent for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any re-letting effected pursuant to the provisions of Section 14.2 for any part of such period . . . ; any such Deficiency shall be paid in monthly installments by Tenant on the days specified in this Lease for payment of the installments of Rent, Landlord shall be entitled to recover from Tenant each monthly amount of the Deficiency for any month shall prejudice Landlord's right to collect the Deficiency for any subsequent month by a similar proceeding; and

(c) whether or not Landlord shall have collected any monthly Deficiencies as aforesaid, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further Deficiencies as and for liquidated and agreed final damages, a sum equal to the amount by which the Rent for the period which otherwise would have constituted the unexpired portion of the Term exceeds the then fair and reasonable rental value of the Premises for the same period, less the aggregate amount of Deficiencies theretofore collected by Landlord pursuant to the provisions of the preceding paragraph (b) for the same period; if, before presentation of proof of such liquidated damages to any court, commission or tribunal, the Premises, or any part thereof, shall have been re-let by Landlord to a bona fide third party for the period which otherwise would have constituted the unexpired portion of the term, or any part thereof, the amount of rent reserved upon such re-letting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Premises so re-let during the term of the re-letting.

Next, the Lease sets forth a method of computing "unpaid Rent which would have accrued and become payable under [the] Lease." Paragraph 4.4 states that unpaid Rent "shall consist solely of the sum of the total Minimum Monthly Rent and charges for the balance of the Term then in effect."

*Interest*. Every payment due under the Lease bears an interest rate of 18% per year. Paragraph 14.5 provides for interest to be paid on

[e]very installment of Rent and every other payment due hereunder from Tenant to Landlord which shall not be paid within ten (10) days after notice that the same shall have become due and payable shall bear interest at the rate of eighteen percent (18%) per annum, or at the highest rate legally permitted, whichever is less, from the date that the same become due and payable until paid, whether or not demand be made therefore.

*Late Charges*. Paragraph 14.6 provides for late charges of 3% to be collected on any late payments of the Minimum Monthly Rent or charges due

-7-

from Tenant.

        *Attorney's Fees.*  Paragraph 14.9 allows for the recovery of attorney's fees in an action to recover any payments due under the Lease.

> In the event of any action or proceeding brought by either party against the other under this Lease, the prevailing party shall be entitled to recover court costs and fees of its attorneys in such action or proceeding in such amount as the court . . . may adjudge reasonable.

## DISCUSSION

### I.    Motions for Summary Judgment

        A motion for summary judgment, may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. Id. at 255; Castle Rock Entm't, Inc. v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998).  "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).   If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).  Finally, "the judge's role in

reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242 (1986).

II.     **ReliaStar's Motion for Summary Judgment on Damages**

With one exception, Home Depot's liability is governed by the Lease and Recognition Agreement.  Specifically, two issues rely on these agreements: (1)  whether Home Depot is liable for interest payments of 18% on late or unpaid rent; and (2) whether Home Depot is liable for attorney's fees.

ReliaStar argues that it is entitled to Summary Judgment for damages in the amount of $10,486,693.90, plus attorney's fees.  According to ReliaStar, the amount which Home Depot owes in past due rent plus 18% interest totals  $12,218,124.21. (Pl.'s R.56 Stmt. at ¶ 24).   This includes past Minimum Monthly Rent totaling $6,924,999.59, and 18% interest on unpaid rent totaling $5,293,124.70. (Pl. Mot. Wasser Aff. Ex. B).  Because, according to ReliaStar, this exceeds the amount outstanding on the loan, which ReliaStar states is $10,486,693.90, Summary Judgment should be entered for the amount outstanding on the loan.  ReliaStar alleges that the amount outstanding on the loan is $10,486.693.90, which includes principle of $8,133,106.68, default interest accruing on the principal at a rate of 11.66% totaling $2,214,064.03, and late charges in the amount of $140,849. (Pl.'s Reply Kenealy Aff. Ex. A).

Finally, ReliaStar argues that pursuant to paragraph 14.9 of the

Lease, they are entitled to recover attorney's fees in conjunction with their suit to recover unpaid rent.

Home Depot disputes ReliaStar's interpretation of its liability under the Lease and Recognition Agreement and objects to ReliaStar's calculation of amount outstanding on the loan.

While conceding liability to ReliaStar for unpaid rent pursuant to this Court's November 2005 Memorandum and Order, Home Depot argues that it owes ReliaStar $7,132,749, which includes $6,924,999.50 plus late charges of $207,749 (3% late charge rate). (Def.'s Opp. Mem. at 7). According to Home Depot, it is not liable for the 18% interest on unpaid rent because both the Recognition Agreement and the Lease limit ReliaStar's damages in the event of default to Minimum Monthly Rent and late charges.

Alternatively, Home Depot asserts that even if it is liable for the 18% interest payments, ReliaStar miscalculated the amount outstanding on the loan by overcharging Home Depot for two payments in the month of December.[3] (Def.'s Opp. Mem. at 13).

In addition, Home Depot states that ReliaStar charged Home Depot for two payments totaling $767,551.81 that were made on real estate taxes G & S failed to pay, together with interest on those payments totaling $227,966.34. (Def.'s Opp. Mem. at 13). Home Depot asserts that these payments for real estate

---

3.      According to ReliaStar's Loan Payment Schedule, G & S missed loan payments on December 1, 2003, December 31, 2003 and January 1, 2004. Home Depot objects to the double charge in December amounting to an overcharge of $125,840. (Def.'s Opp. Mem. at 13).

taxes were due under the Notes, not the Lease, and because Home Depot was not a

party to the Notes, it cannot be liable for payments made by ReliaStar.[4]

Therefore, after deducting $1,119,358.23 for the overcharge and tax payments,

Home Depot argues that the amount outstanding on the loan is $9,373,012.48, not,

as ReliaStar argues, $10,486,693.90. (Def.'s Opp. Mem at 13).

     A.    <u>Liability for Interest and Attorney's Fees</u>

As a general rule, "when the language of a contract is clear, the

court will presume that the parties intended what they expressed." Joseph M.

Perillo, <u>Calamari and Perillo on Contracts</u> § 3.10 (5th ed. 2003).  The New York

Court of Appeals stated that "It is axiomatic that a contract is to be interpreted so

as to give effect to the intention of the parties as expressed in the unequivocal

language employed." <u>Wallace v. 600 Partners Co.</u>, 658 N.E.2d 715 (N.Y. 1995).

Therefore, when the parties set down in clear terms their agreement, the court

should not go outside the four corners of the document.  <u>See</u> <u>Vermont Teddy Bear</u>

<u>Co. v. 538 Madison Realty Co.</u>, 807 N.E.2d 876 (N.Y. 2004) ("[C]ourts may not

by construction add or excise terms, nor distort the meaning of those used and

thereby make a new contract for the parties under the guise of interpreting the

writing.").

The interest served by this rule is that of commercial certainty.

This is a particular concern when dealing with real property transactions where

"the instrument was negotiated between sophisticated, counseled business people

---

    4.    Home Depot goes so far as to characterize ReliaStar's payment of real estate
taxes as "gratuitous" expenditures. (Def.'s Opp. Mem. at 14).

negotiating at arms length." Id. (quoting Wallace v. 600 Partners Co., 658 N.E.2d 715 (N.Y. 1995)).

Finally, whether a writing is ambiguous is a question of law for the court to decide. Wallace, 658 N.E.2d at 548.  It is only after the court decides that the writing is ambiguous, that the rules governing ambiguous contracts are triggered. See Breed v. Insurance Company of North America, 385 N.E.2d 1280 (N.Y. 1978) ("Obviously, before the rules governing the construction of ambiguous contracts are triggered, the court must first find ambiguity in the [contract]."). Thus, in the absence of ambiguity, the court will contain its interpretation of the contract to the terms of the agreement, giving such terms their plain meaning.

### 1.      18% Interest Under the Lease

The Recognition Agreement,  which this Court held was unambiguous on its face, obligates Home Depot to make all payments "of whatever kind" to ReliaStar. Home Depot, No. 98-6719, 2005 U.S. Dist. LEXIS 28669, at * 24.  Accordingly, this includes the 18% interest rate per year on late or unpaid payments under the Lease.

Home Depot argues that interest is not a "payment" contemplated under the Recognition Agreement because the term "interest" was omitted from paragraph 7(a) of the Recognition Agreement.  Thus, Home Depot argues that the Recognition Agreement only creates liability for *payments* due under the Lease and because interest is not a *payment* under the Lease in the event of default,

-12-

Home Depot cannot be liable to ReliaStar for interest payments on late or unpaid rent.

The Recognition Agreement states that:

> Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment *all rents, purchase payments and other payments of whatever kind described in the Lease* without any reduction, set off, abatement, or diminution whatever.

In light of this language, it is clear that the Recognition Agreement does not limit liability to rent payments, but rather, by its very terms, includes payments "of whatever kind" under the Lease. Thus, Home Depot's argument that the agreement limited Home Depot's liability solely to unpaid rent must fail as it is not supported by a plain reading of the Recognition Agreement.

Because the Recognition Agreement makes Home Depot liable for "all payments" under the Lease, and the 18% interest rate is a payment under the lease, it follows that Home Depot is liable for the 18% interest payments. Contrary to Home Depot's interpretation of the Lease, the language in paragraph 14.5 of the Lease is very clear that "*every* installment of Rent and *every* other payment due" shall carry an 18% interest rate per year until paid.

Home Depot also argues that paragraph 14.3 of the Lease provides that in the event of default Home Depot is liable only for unpaid rent, and not for interest charges. (Def.'s Opp. Mem. at 10). Home Depot turns to paragraph 14.4 for a calculation of unpaid rent and asserts that according to paragraph 14.4 unpaid rent is calculated by taking "solely" the sum of the total Minimum Monthly Rent

-13-

and charges for the balance of the term then in effect. Thus, as Home Depot

interprets the Lease, because Home Depot defaulted under the Lease, and

paragraphs 14.3 and 14.4 limit damages to unpaid rent and late charges, interest is

not contemplated in the event of Tenant's default; therefore, Home Depot

concludes that it cannot be liable for these payments.

Home Depot misconstrues the Lease when it argues that paragraph

14.4 limits damages in the event of Tenant's default "solely" to total Minimum

Monthly Rent and late charges. When read in conjunction with paragraph 14.3, it

is clear that paragraph 14.4 provides for a method of calculating unpaid rent if the

Landlord elected to take a lump sum payment as liquidated damages, as set forth in

paragraph 14.3(c). In particular, paragraph 14.4 states that it applies when

calculating "unpaid Rent which *would have accrued and become payable*."

Because ReliaStar chose to re-let the premises and has not exercised its option

under paragraph 14.3(c) to terminate the Lease and collect unpaid rent, the

provision calculating unpaid rent which would have accrued does not apply, as

rents are being charged monthly "as they accrue."

Thus, in light of the broad language of the Recognition Agreement

and the clear and unambiguous language of the Lease, Home Depot is liable for

18% interest charges on late payments under the lease.

### 2. Attorney's Fees

The Recognition Agreement and the Lease clearly support Home

Depot's liability for attorney's fees in an action to recover unpaid Rent. Home

Depot argues that this is an action under the Recognition Agreement and not under the Lease and therefore because the Recognition Agreement does not provide for attorney's fees, ReliaStar cannot recover them in this action. (Def.'s Opp. Mem at 14).

However, like Home Depot's argument regarding interest payments, this argument must fail in light of the broad language of the Recognition Agreement which holds Home Depot liable to ReliaStar for "any payment whatever kind."[5] Thus, because the Recognition Agreement incorporates liability for all payments under the Lease, and attorney's fees are payments under the Lease pursuant to paragraph 14.9, the Recognition Agreement creates liability for attorney's fees.

B.    Amount Outstanding on the Loan

Home Depot also contests ReliaStar's calculation of amount outstanding on the loan. According to Home Depot, after deducting certain overcharges and charges for real estate taxes paid by ReliaStar, the amount outstanding on the loan is $9,373,012.48. (Def.'s Opp. Mem. at 14).

In addition to an overcharge, Home Depot argues that ReliaStar, in its calculation of amount due on the loan, included payments for real estate taxes totaling $765,551.89 together with interest on those payments of $227,966.34. (Def.'s Opp. Mem. at 13). According to Home Depot, it has no liability for real

---

5.    Home Depot attempts to limit the term "payment" to the "payment of rent." However, this argument ignores the plain meaning of the word payment which according to Webster's Dictionary includes "something given in return; compensation."

estate taxes; liability for real estate taxes is included in the Note, to which Home

Depot was not a party and therefore Home Depot cannot be liable for real estate

taxes paid by ReliaStar pursuant to the Note.

            In its Reply papers, ReliaStar agrees that there was a

miscalculation, however, contends that the miscalculation was due to an erroneous

late charge plus interest for the month of December 2003 in the amount of

$5,676.81. (Pl.'s Reply Aff. Kenealy at ¶ 3).  ReliaStar subsequently adjusted its

numbers in its Reply papers and now argues that the amount outstanding on the

loan is $10,486,683.90. (Pl.'s Reply Aff. Kenealy at ¶ 3).  Because ReliaStar never

explained the alleged double charge in December, but rather, simply provided a

new calculation on the loan schedule, there remains an issue of fact as to whether

G & S was, in fact, charged twice for the month of December.

            Furthermore, ReliaStar argues that Home Depot is liable to it for

ReliaStar's payment of real estate taxes on the Premises. While ReliaStar based its

argument that Home Depot was liable for the real estate taxes on the Note, which

provides that G & S would be liable for such payments, ReliaStar failed to address

the Lease, which, under certain circumstances, makes Tenant liable for the

payment of real estate taxes.  Paragraph 5.1 of the Lease provides that the Tenant

shall be liable for real estate taxes, depending on whether the property is assessed

with the Shopping Center or separately from the Shopping Center.  Thus, in

accordance with the Recognition Agreement, ReliaStar's right to seek

reimbursement from Home Depot for its payment of real estate taxes depends on

-16-

whether Home Depot, as Tenant, is liable for such payments under the Lease. Because neither party has provided any information on the assessment of these tax payments, there are unresolved issues of fact with regards to the nature of these payments.

Because this Court finds that Home Depot is liable for the 18% interest charges on late or unpaid rent, Home Depot's liability under the lease exceeds the amount outstanding on the loan under both Home Depot's and ReliaStar's calculations. Therefore, the amount left outstanding on the loan will govern Home Depot's liability to ReliaStar. Thus, judgment cannot be entered on Home Depot's exact liability to ReliaStar until the parties determine the exact amount outstanding on the loan.

## III.    ReliaStar's Motion for 54(b) Certification

ReliaStar moves under Federal Rule Civil Procedure 54(b) for entry of final judgment in its favor. Home Depot does not oppose ReliaStar's motion once Home Depot's damages are determined by the Court. Therefore, the parties are referred to the Magistrate Judge in accordance with this Order, and after the factual disputes are resolved as to the amount outstanding on the loan, the Court will enter final judgment in favor of ReliaStar pursuant to Federal Rule Civil Procedure 54(b).

## CONCLUSION

After considering the plain language of both the Recognition Agreement and the Lease, ReliaStar's Motion for Summary Judgment on the issue

-17-

of liability for unpaid rent, plus 18% interest owed on late/unpaid rent is

**GRANTED.**  Furthermore, because attorney's fees are included as payments

under the Lease,  ReliaStar's Motion for Summary Judgment on the issue of Home

Depot's liability for attorney's fees is **GRANTED.**

   However, because there are factual disputes regarding the amount

outstanding on the loan, Summary Judgment is **DENIED** on the issue of Home

Depot's liability to ReliaStar.  The parties are hereby referred to the Magistrate

Judge to conduct further computations on this issue.

   Accordingly, once the amount outstanding on the loan is established

in accordance with this Order, Final Judgment can be entered in favor of ReliaStar

pursuant to Fed. R. Civ. P. 54(b).

SO ORDERED.

             <u>s/s Thomas C. Platt</u>
             Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
    October 11, 2006